UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HARTFORD INSURANCE COMPANY OF THE MIDWEST, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:04 CV 1537 DDN ) |
| BEATRICE WYLLIE, JILL SPREHE, ROBERT FAERBER and AMY FAERBER, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM

This action is before the court on the motions of defendant
Beatrice Wyllie for summary judgment (Doc. 30), and of plaintiff
Hartford Insurance Company for summary judgment (Doc. 34). All parties
have consented the authority of the undersigned United States Magistrate
Judge pursuant to 28 U.S.C. § 636(c).[1] A hearing had been set for
October 24, 2005.

## The pleadings

Plaintiff Hartford Insurance Company has brought this action for
declaratory judgment against defendants Amy Faerber, Robert Faerber,
Jill Sprehe, and Beatrice Wyllie to determine whether it has a duty to
defend or indemnify its insured Wyllie in an underlying lawsuit. (Doc.
1.) Jill Sprehe, Robert Faerber, and Amy Faerber sued Beatrice Wyllie
and others in the Circuit Court of St. Louis County, alleging breach of
contract and fraud in connection with the sale of Wyllie's condominium
to them. (Doc. 1 Ex. B.) In its amended complaint (Doc. 15), Hartford
seeks a declaration that the allegations in the underlying suit are not
covered by its policy.

Defendant Wyllie moved for summary judgment, arguing that under its
policy Hartford has a duty to defend her in the underlying lawsuit
because it is for negligent misrepresentation, which Missouri has held

_____

[1]The court previously determined that it had subject matter
jurisdiction granted by 28 U.S.C. § 1332 based upon the diversity of the
parties' citizenship and the amount in controversy. See Doc. 20
(Memorandum and Order issued March 28, 2005).

insurers have a duty to defend against.  Wyllie also argues that the
alleged diminution in value of the property is "property damage" within
the definition of the policy.

In its motion for summary judgment, Hartford argues that it has no
duty to defend Wyllie, because there has been no "property damage,"
there has been no "occurrence" leading to property damage under the
policy, and neither the occurrence alleged by Wyllie to have happened
nor the alleged property damage took place during the policy period.
Hartford also argues that, even if the court finds that the policy
affords coverage, policy exclusions apply that relieve it of the duty
to defend and indemnify Wyllie in the underlying suit.

Wyllie argues that the allegations in the underlying suit result
from property damage, that the allegations are an "occurrence" under
Missouri law, and that Hartford is estopped from relying on the
exclusions and endorsement of her policy as a reason for denying her
claim, because it did not rely on these grounds when initially denying
her claim.

## Summary Judgment Standard

Summary judgment must be granted, if the pleadings and proffer of
evidence demonstrate that no genuine issue of material fact exists and
the moving party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Union
Elec. Co. v. Southwestern Bell Tel. L.P., 378 F.3d 781, 785 (8th Cir.
2004) ("Th[e] Court determines whether the evidence, when viewed in the
light most favorable to the non-moving party, and according it the
benefit of all reasonable inferences, shows that there are no genuine
issues of material fact and that the moving party is entitled to
judgment as a matter of law.").  "A fact is 'material' if it might
affect the outcome of the case and a factual dispute is 'genuine' if the
evidence is such that a reasonable jury could return a verdict for the
non-moving party." Scottsdale Ins. Co. v. Tri-State Ins. Co. of Minn.,
302 F. Supp. 2d 1100, 1103 (D.N.D. 2004).

Initially, the moving party must demonstrate the absence of an
issue for trial.  Celotex, 477 U.S. at 323.  Once a motion is properly

made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence of specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); <u>Howard v. Columbia Pub. Sch. Dist.</u>, 363 F.3d 797, 800 (8th Cir. 2004), <u>cert. denied</u>, 2004 WL 2153070 (U.S. Nov. 1, 2004); <u>Krein v. DBA Corp.</u>, 327 F.3d 723, 726 (8th Cir. 2003).

## Undisputed Facts

Hartford Insurance Company issued a homeowner's insurance policy to defendant Beatrice Wyllie, which was effective from December 2, 2002, to December 2, 2003. (Doc. 42 ¶ 11; Doc. 36 ¶ 1.)[2] This policy provided in relevant part:

> **5.** **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
>
> **a.** **Bodily injury**; or
>
> **b.** **Property damage**.
>
> **6.** **Property Damage** means physical injury to, destruction of, or loss of use of tangible property.
>
> * * *
>
> **SECTION II-LIABILITY COVERAGES**
>
> **COVERAGE E-Personal Liability**
>
> If a claim is made or a suit brought against an insured for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:
>
> **1.** Pay up to our limit of liability for the damages for which the **insured** is legally liable . . .; and

---

[2]In her response to plaintiff's summary judgment motion, Wyllie denies that the policy was effective from December 2, 2002 to December 2, 2003. (Doc. 40 ¶ 1.) However, in her statement of uncontroverted facts, Wyllie states that the policy was effective during this period. (Doc. 42 ¶ 11.)

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

* * *

**SECTION II-EXCLUSIONS**

**1. Coverage E-Personal Liability and Coverage F-Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

    **a.** Which is expected or intended by the insured;

* * *

**2. Coverage E-Personal Liability**, does not apply to:

* * *

    **b. Property damage** to property owned by the insured;

* * *

**SECTION I AND II-CONDITIONS**

**1. Policy Period**. This policy applies only to loss in Section I or **bodily injury** or **property damage** in Section II, which occurs during the policy period.

* * *

**SECTION II-EXCLUSIONS**

* * *

    **n.** Arising out of any written or oral statement made by you or others on your behalf which is material to any financial transaction.

(Doc. 34 Ex. A.)

    Beatrice Wyllie sold her condominium to Jill Sprehe, Amy Faerber, and Robert Faerber in November, 2002, and the sale was closed in December, 2002. However, this sale transaction resulted in the underlying lawsuit, where Faerber, Faerber, and Sprehe brought suit against Wyllie in the Circuit Court of St. Louis County, alleging breach of contract and fraud. (Doc. 34 Ex. B at 1, 4.) Specifically, those plaintiffs allege that Wyllie represented in her seller's disclosure statement that there were no problems with the condominium, and that

Wyllie failed to disclose problems and defects with the roof and the heating and cooling systems, and that the elevators were in poor working condition, and other problems. (Id. at 3.) They also allege that Wyllie knew these representations were false, and that they relied on them when purchasing the condominium from her. ( Id. at 8.)

Wyllie demanded that plaintiff Hartford Insurance defend her in the underlying suit. (Doc. 36 ¶ 9.)

## **Discussion**

This court must determine whether Hartford has a duty to defend or indemnify Wyllie in the underlying suit brought by Faerber, Faerber, and Sprehe. This court will look to Missouri law for the rules of decision, because subject matter jurisdiction over this case is based on diversity of citizenship. Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); General Electric Capital Corp. v. Union Planters Bank, NA, 409 F.3d 1049, 1053 (8th Cir. 2005) ("In diversity cases, we apply the substantive law of the state in which the district court sits."). Missouri courts would apply the substantive law of Missouri in an action involving real estate insurance, when the real estate is located in Missouri. Egnatic v. Nguyen, 113 S.W.3d 659, 665 (Mo. Ct. App. 2003) (principal location of insured risk is most important factor when determining choice of law).

Under Missouri law, an insurer's duty to defend is broader than the duty to indemnify. McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liability Ins. Co., 989 S.W.2d 168, 170 (Mo. 1999); Truck Ins. Exchange v. Prairie Framing, LLC, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005). An insurance company has a duty to defend whenever the insured is exposed to potential liability, "no matter how unlikely it is that the insured will be found liable and whether or not the insured is ultimately found liable." Truck Ins. Exchange, 162 S.W.3d at 79 (quoting John Alan Appleman, 7C Insurance Law and Practice § 4684.01 (Walter F. Berdal, ed. 1979)). The duty to defend is determined by comparing the language of the coverage afforded in the policy with the allegations in the pleadings. McCormack, 989 S.W.2d at 170.

Wyllie argues that the allegations in the underlying lawsuit include a claim for negligent misrepresentation and that diminution in

value can be considered "property damage" under the policy.  Hartford argues that there has been no "property damage" as the term is defined in the policy and that, even if there was, there has been no "occurrence" leading to this property damage.  Therefore, it argues, its policy does not afford Wyllie coverage.

## Nature of the Underlying Lawsuit

The court must first determine the relevant allegations in the underlying lawsuit.  "If the allegations and claims in the [the underlying lawsuit], and the facts [plaintiff] knew or could have ascertained from a reasonable investigation, are potentially within the scope of the policy's coverage," then Hartford has a duty to defend Wyllie in the underlying suit.  Truck Ins. Exchange, 162 S.W.3d at 79.  "This duty to defend potentially insured claims arises 'even though claims beyond coverage may also be present.'"  Id. (quoting Superior Equip. Co. v. Maryland Cas. Co., 986 S.W.2d 477, 482 (Mo. Ct. App. 1998)).

Wyllie argues that the allegations against her contain a claim for negligent misrepresentation (Doc. 31 at 5), while Hartford argues the underlying claims are for breach of contract and for fraud (Doc. 39 at 4-7).  Both the initial and the amended petitions describe the causes of action as breach of contract and fraud.  (Doc. 1 Ex. B at 1, 5; Doc. 34 Ex. B at 1, 4.)  Neither party argues that Hartford has a duty to defend a breach of contract claim.  However, Hartford and Wyllie disagree as to the proper characterization of the "fraud" claim.

Negligent misrepresentation requires the plaintiff to plead that:

(1) the defendant supplied information in the course of its business or because of some other pecuniary interest; (2) due to the defendant's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) the defendant intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) the plaintiff justifiably relied on the information; and (5) as a result of the plaintiff's reliance on the statement, the plaintiff suffered a pecuniary loss.

<u>Mark Twain Kansas City Bank v. Jackson, Brouillette, Pohl & Kirley</u>, 912
S.W.2d 536, 538 n.2 (Mo. Ct. App. 1996).  In contrast, to allege a claim
for fraudulent misrepresentation the plaintiff must plead:

> 1) a representation; 2) its falsity; 3) its materiality; 4)
> the speaker's knowledge of its falsity, or his ignorance of
> its truth; 5) the speaker's intent that it should be acted
> on by the person and in the manner reasonably contemplated;
> 6) the hearer's ignorance of the falsity of the
> representation; 7) the hearer's reliance on the
> representation being true; 8) his right to rely thereon; and,
> 9) the hearer's consequent and proximately caused injury.

<u>Cottonhill Investment Co. v. Boatmen's Nat'l Bank of Cape Girardeau</u>, 887
S.W.2d 742, 744 (Mo. Ct. App. 1994) (quoting <u>Heberer v. Shell Oil Co.</u>,
744 S.W.2d 441, 443 (Mo. Ct. App. 1988)).

An examination of the petitions in the underlying suit reveals that
the claim is for the intentional tort of fraudulent misrepresentation
and not negligent misrepresentation.  Plaintiffs in the underlying suit
allege that "[i]n order to induce" plaintiffs to purchase the
condominium, Wyllie made several representations about the house.  (Doc.
34 Ex. B at ¶ 29; Doc. 1 Ex. B at ¶ 25.)  Plaintiffs further alleged
that these representations "were material to the decision of Plaintiffs
to execute the Contract and close on the purchase and sale of the
property." (Doc. 34 Ex. B at ¶ 30; Doc. 1 Ex. B at ¶ 26.)  Plaintiffs
allege that Wyllie either knew these representations were false or was
ignorant of their falsity, and that Wyllie intended that plaintiffs rely
on her representations.  (Doc. 34 Ex. B at 31, 32; Doc. 1 Ex. B at ¶ 27,
28.)  All of the elements of fraudulent misrepresentation are
properly pled, and, therefore, the underlying lawsuit is one for
fraudulent misrepresentation and breach of contract.  There is no
indication from the petitions in the underlying suit that the claim is
for negligent misrepresentation.  It is not alleged that Wyllie failed
to exercise reasonable care in determining whether the information she
was giving the plaintiffs was false.  Instead, the plaintiffs allege
that she either knew the information was false or was unaware of its
falsity.

**Coverage vel non**

Next, the court must determine whether the homeowner's insurance policy held by Wyllie conferred upon Hartford a duty to defend a lawsuit for fraudulent misrepresentation and breach of contract. The insurance policy provides:

> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:
>
> ***
>
> 2. Provide a defense . . .

(Doc. 34 Ex. A at Pol. 12.) Therefore, there must be an "occurrence" which led to "property damage." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," which results in bodily injury or property damage. (Doc. 34 Ex. A at Pol. 1.) The policy does not define "accident." The alleged acts of breach of contract or fraudulent misrepresentation must be characterized as "accidents" for this policy to place a duty to defend upon Hartford.

"The interpretation of an insurance policy is a question of law." McCormack, 989 S.W.2 at 171. Policies are interpreted using the meaning that an ordinary person purchasing insurance would attach to the language in the policy. Id. Courts have defined "accident" as "that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual or unforeseen." Koch Engineering Co. v. Gibralter Casualty Co., 78 F.3d 1291, 1293 (8th Cir. 1996); Missouri Terrazzo Co. v. Iowa National Mutual Ins. Co., 566 F. Supp. 546, 552 (E.D. Mo. 1983). Accordingly, Wyllie's alleged breach of contract is not an accident. American States Ins. Co. v. Mathis, 974 S.W.2d 647, 650 (Mo. Ct. App. 1998) ("breaches of contract are not 'accidents' or 'occurrences.'").

Here, the burden is on the insured to show that the policy affords her coverage for her potential liability, or imposes upon the insured a duty to defend. Mathis, 974 S.W.2d at 649; Trans World Airlines, Inc. v. Associated Aviation Underwriters, 58 S.W.3d 609, 621 (Mo. Ct. App. 2001). Wyllie has not met this burden. Fraud, as an intentional act, is not an accident which happens without intention.

Even assuming *arguendo* that the underlying suit contains a claim for negligent misrepresentation, Hartford has no duty to defend or indemnify Wyllie. Missouri courts have held that negligent misrepresentation can be considered an "occurrence" under certain policies, thereby extending a duty to defend upon the insurer. <u>Wood v. Safeco Ins. Co. of America</u>, 980 S.W.2d 43, 53 (Mo. Ct. App. 1998). In <u>Wood</u>, the insured represented to the prospective buyers that the property would not flood. <u>Id.</u> at 47. After the transaction, however, the property flooded, and because of that, the new owners of the property suffered damage in the amount of $350,000. <u>Id.</u> at 47. The court found that the flooding was "property damage" as defined by the policy,[3] and that the damage due to the flooding occurred as a result of the "occurrence" of the negligent misrepresentation. <u>Id.</u> at 53. The buyers would not have bought the property had it not been for the insured's representation, and therefore, would never have suffered the flooding damage. <u>See</u> <u>id.</u>

<u>Wood</u> is not like the instant case, because no property damage occurred on account of Wyllie's statements about the condominium. Any defects in the condominium were in existence at the time they purchased the property. There was no subsequent damage that diminished the value of the condominium; the condominium's true value was the same at the time of the representations as it was when the underlying plaintiffs discovered the alleged misrepresentations.

The Eighth Circuit, when analyzing a similar definition of "property damage,"[4] concluded that there was no property damage until the occurrence causes loss of use, physical injury, or damage to the

---

[3]The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results" in personal injury or property damage. The policy defined "property damage" as "physical injury to or destruction of tangible property including loss of its use." <u>Wood</u>, 980 S.W.2d at 47. These definitions are identical to the definitions in this case.

[4]The policy at issue in this case defined "property damage" as "damage to someone else's property or its loss or destruction and the loss of its use." <u>Lippincott</u>, 287 F.3d at 705.

–9–

property. St. Paul Fire & Marine Ins. Co. v. Lippincott, 287 F.3d 703, 705 (8th Cir. 2002); Esicorp, Inc. v. Liberty Mut. Ins. Co., 266 F.2d 859, 862-63 (8th Cir. 2001). The court in Lippincott held that the alleged misrepresentations did not cause any damage to the house. Lippincott, 287 F.3d at 706. "The structural flaws in the house constitute tangible property damage, but these flaws predate the occurrence of concealments and misrepresentations by which the Lippincotts incurred liability." Id. at 706. Like Lippincott, Wyllie's alleged representations caused no change in the property, and no loss in value flowed from her conduct. Further, Missouri courts have found no duty to defend a negligent misrepresentation claim when the negligent misrepresentation and breach of contract claims arise out of the same conduct. Mathis, 974 S.W.2d at 648.[5] Mathis is similar to the case at bar, because here the breach of contract and misrepresentation claim arise from the disclosures Wyllie either made or failed to make in the seller's disclosure statement. (Doc. 34 Ex. B at 2, 6.)

In addition, no incidents or conduct in the underlying lawsuit took place during the policy period. The policy was effective from December 2, 2002 to December 2, 2003. Wyllie made the alleged misrepresentations in the seller's disclosure statement in October 2002 (Doc. 34 Ex. D), and the sale contract was entered into November 14, 2002 (id. Ex. C). Any of the property defects complained of in the underlying lawsuit also occurred before October 2002, the date Wyllie allegedly misrepresented them. (Id. Ex. A at Pol. 17.)

Hartford Insurance has no duty under the terms of the policy to defend Wyllie in the underlying suit. Not only are the claims of breach of contract and fraud not covered by the policy but, even if the petition contained a claim for negligent misrepresentation, that occurrence did not lead to any property damage as defined by the policy. Any alleged conduct also took place outside the effective dates of the policy.

_____

[5]The policy in Mathis "covered property damage caused by an 'occurrence' that takes place in the coverage territory" and defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Mathis, 974 S.W.2d at 648.

Wyllie argues that Hartford is estopped from relying on exclusions (e) property owned by insured and (n) regarding financial transactions as bases for denying coverage. The relevant insurance policy provisions state:

**SECTION II-EXCLUSIONS**

1. **Coverage E-Personal Liability and Coverage F-Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

   **a.** which is expected or intended by the insured;

   * * *

   **e.** Arising out of premises:
   **(1)** Owned by an insured. . .

   * * *

   **n.** Arising out of any written or oral statement made by you or others on your behalf which is material to any financial transaction.

(Doc. 34 Ex. A; Doc. 35.)

In the denial letter to its insured, Hartford stated that it was denying coverage because the incident did not involve an occurrence leading to property damage, as defined by the policy. (Doc. 44 Ex. F at 2.) The letter further stated that the policy excluded coverage for any property damage "[w]hich is expected or intended by the insured." (Id.) Hartford concluded that fraud was an intentional act under the policy exclusion and not covered. (Id.) In both Hartford's original and the first amended complaints, it alleges identical reasons for denying coverage. Neither the letter nor the complaints state policy exclusions (e) or (n) as a reason for denying coverage. It was not until its motion for summary judgment, filed June 24, 2005, nearly a year after the denial letter was sent, that Hartford mentions exclusions (e) and (n).

Once an insurer has denied liability on a specific ground, it can be estopped from later denying liability on a different ground. Burns National Lock Installation Co. v. American Family Mutual Ins. Co., 61 S.W.3d 262, 267 (Mo. Ct. App. 2001). "Estoppel requires (1) an

admission, statement or act inconsistent with the claim afterwards asserted and sued upon; (2) action by the other party on the faith of such admission, statement or act; and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act." Id.; Brown v. State Farm Mut. Automobile Ins. Co., 776 S.W.2d 384, 388 (Mo. 1989).

Hartford now argues that exclusions (e) and (n) apply. Until Hartford moved for summary judgment, Wyllie had not pursued or prepared any arguments as to why these policy exclusions did not apply. However, Wyllie has not been prejudiced by this, because in the context of this case, if Wyllie needed more investigation and opportunity to defend against these exclusions, such is available under Federal Rule of Civil Procedure 56.[6] As it is, the court has determined that the policy does not provide coverage regardless of these exclusions. There was no "occurrence" or "property damage" alleged in the underlying lawsuit as they are defined in the policy.

For these reasons, the motion of plaintiff Hartford Insurance Company for summary judgment is sustained and the motion of defendant Wyllie for summary judgment is denied.

An appropriate judgment order is issued herewith.


**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

---

[6]Rule 56 provides in part:

(f)    **When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

-12-

Signed on November 1, 2005.